UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 04-23497 |
| | ) | |
| DIANE LOUISE SUTTON, | ) | Chapter 7 |
|     Debtor. | ) | |
| | ) | |
| DOWNING CONSTRUCTION | ) | Adversary Proceeding No. 05-1040 |
| COMPANY, INC., | ) | |
|     Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| DIANE LOUISE SUTTON, | ) | |
|     Defendant. | ) | |

MEMORANDUM OF OPINION

Before the Court is the plaintiff's motion for summary judgment. At issue is the dischargeability of debts arising from the debtor's theft of the plaintiff's funds while she was employed by the plaintiff. The plaintiff seeks summary judgment on the basis of issue preclusion, or in the alternative, on the basis of evidence presented in this adversary proceeding. For the reasons that follow, summary judgment is granted as to the dischargeability of the debt owed on account of fraudulent checks, but is denied as to the dischargeability of the debt owed for the debtor's breach of her implied duty of loyalty as an employee. The dischargeability of this latter debt will be the subject of further proceedings only if the plaintiff notifies the Court in writing within the next twenty days that it wishes to pursue such proceedings.

## FACTS

The following facts are not in dispute based on the debtor's deposition and the affadavit of Michael Downing, president of Downing Construction Company ("Downing"). From July 1998 to February 1, 2000, Downing employed debtor Diane Sutton as the company's office secretary. Ms. Sutton kept Downing's books and prepared checks to satisfy its accounts payable. From October 1998 to January 25, 2000, Ms. Sutton wrote 187 checks totaling $187,997.41 either to herself or for the payment of her personal debts and forged the signature of Downing's president, Michael Downing.

Upon discovery of Ms. Sutton's actions, Downing terminated her employment and filed suit against her in the Cuyahoga County Court of Common Pleas. Downing's complaint alleged conversion, fraud, and breach of the duty of loyalty. Specifically, the complaint sought recovery of the funds taken by Ms. Sutton ($187, 997.41), plus the salary paid to Ms. Sutton during her time of employment ($45,333.33), less $14,507.68, which Ms. Sutton had remitted to Downing as partial restitution. Ms. Sutton failed to answer or otherwise appear in the state court action, and on April 15, 2002, the court entered a default judgment in favor of Downing in the amount of $218,823.06.

On October 21, 2004, Ms. Sutton filed her petition under Chapter 7 of the

Bankruptcy Code. She received a discharge on February 2, 2005. On January 24, 2005, Downing commenced this adversary proceeding to determine the dischargeability of Ms. Sutton's debts to Downing. Downing moved for summary judgment (Docket #25) on August 19, 2005. Ms. Sutton did not respond to Downing's motion.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*,

296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *See Tenn. Dep't. of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

## DISCUSSION

### Issue Preclusion

Downing asserts that based on the state court judgment and the doctrine of collateral estoppel, this Court is required to enter a finding of nondischargeability as a matter of law. Collateral estoppel, also known as issue preclusion, prevents the same parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *See In re Fordu*, 201 F.3d 693, 704

(6th Cir. 1999). It is well established that issue preclusion principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent relitigation of issues that were already decided in a state court. *See, e.g., Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991)("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Stone v. Kirk*, 8 F.3d 1079, 1090 (6th Cir. 1993) ("That 'Congress intended the bankruptcy court to determine the final result–dischargeability or not–does not require the bankruptcy court to redetermine all the underlying facts.'") (quoting *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981)").

Under the full faith and credit principles of 28 U.S.C. § 1738, state law, not federal common law, governs the preclusive effect of a state court judgment. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 374 (1985). A bankruptcy court must give the same issue-preclusive effect to a state court judgment that the judgment would be given under that state's law. *See* 470 U.S. at 374. Accordingly, in this case the Court will apply Ohio's law on issue preclusion to the Ohio court's judgment against Ms. Sutton. *See Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315 (6th Cir. 1997) (applying California law to a California court's default judgment).

Under Ohio law, the doctrine of issue preclusion,

5

applies when a fact or issue '(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.'

*In re Fordu,* 201 F.3d at 704 (quoting *Thompson v. Wing,* 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994)); *accord In re Sweeney,* 276 B.R. 186 (B.A.P. 6th Cir. 2002) (applying "actually and directly litigated" element of Ohio issue preclusion law); *In re Rebarchek,* 293 B.R. 400, 405 (Bankr. N.D. Ohio 2002) (same).

The first question is whether an issue can be considered actually and directly litigated in a prior suit when the party against whom the judgment was rendered did not file an answer or otherwise appear. In *In re Sweeney,* the Bankruptcy Appellate Panel for the Sixth Circuit stated the rule for whether an issue is "actually and directly litigated" as follows:

> [T]he state court must decide the merits of the case, and the court being asked to give preclusive effect to a default judgment in a subsequent litigation must have some reliable way of knowing that the decision was made on the merits. The best evidence would be findings of fact and conclusions of law by the court entering the default judgment. These need not be entered in any special or formal way, but the default court must state what findings and conclusions, if any, it has reached in arriving at the judgment. Those findings and conclusions will have preclusive effect.

276 B.R. at 194 (citing *Ohio Valley Radiology Assoc. v. Valley Hosp. Ass'n.,*

6

28 Ohio St.3d 118, 502 N.E.2d 599 (1986); *accord In re Rebarchek*, 293 B.R. at 405 (Bankr. N.D. Ohio 2002). In this case, Downing has presented only a journal entry of the default judgment. The Court has no record that any findings of fact or conclusions of law were entered by the state trial court. Without any record that the default judgment was decided on the merits, the default judgment does not have preclusive effect under Ohio law.

*Nondischargeability Under Subsection 523(a)(4)*

Because Downing is not entitled to summary judgment on the basis of issue preclusion, the Court must determine whether Downing is entitled to summary judgment on the basis of the undisputed facts contained in the record of this case. The discharge exception contained in 11 U.S.C. § 523(a)(4) renders a claim nondischargeable in three situations: fraudulent malfeasance by a fiduciary, embezzlement, and larceny. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.10[1][c] (15th ed. rev. 2005) (noting that the phrase "while acting in a fiduciary capacity" clearly qualifies the words "fraud or defalcation" and not "embezzlement" or "larceny"). Federal common law defines these terms. *Id.*

Federal law defines "embezzlement" under subsection 523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re*

7

*Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (internal citations omitted). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Id.* Larceny differs from embezzlement in that larceny does not require an entrustment. Instead larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003).

In the present case, it is not clear whether Ms. Sutton's actions are best described as embezzlement or larceny. On these facts, however, it is a distinction without a difference. Ms. Sutton was responsible for handling Downing's accounts payable and regularly wrote checks to satisfy those accounts. This would indicate embezzlement insofar as Downing entrusted property to Ms. Sutton and she fraudulently appropriated that property for her own use. Ms. Sutton, however, apparently did not have actual control or possession of Downing's funds since the president's signature was required on the checks. Thus, there may not have been an entrustment of the property actually stolen. By forging Michael Downing's signature on checks which Ms. Sutton had written to herself and to satisfy her own

8

personal debts, Ms. Sutton's actions look more like larceny. Embezzlement or larceny, the result is the same: the debt owing to Downing for the 187 fraudulent checks, less the partial restitution already paid, is nondischargeable under subsection 523(a)(4).

Downing also argues that Ms. Sutton breached an implied duty of loyalty while employed by Downing. Downing argues that $45,333.33, representing Ms. Sutton's salary while employed by Downing, is also nondischargeable under subsection 523(a)(4). Because Downing has only argued for nondischargeability on the basis of subsection 523(a)(4), the Court's discussion is limited to subsection 523(a)(4).

As noted above, subsection 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." A defalcation under subsection 523(a)(4) requires: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). The existence of a fiduciary relationship is a question of federal common law. *Id.* While an ordinary agent-principal relationship can involve fiduciary duties, "an agent principal relationship standing alone is insufficient to establish the type of fiduciary duty contemplated by section 523." 397 F.3d at 391 (citing *In re*

9

*Interstate Agency*, 760 F.2d 121, 125 (6th Cir. 1985)). Instead, a fiduciary relationship for purposes of section 523 requires an "express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997). An express or technical trust requires: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Blaszak*, 397 F.3d at 391 (citing *In re Grim*, 293 B.R. at 166). Here, Downing did not present any evidence of an express or technical trust relationship. Under the Sixth Circuit's decision in *Blaszak*, the breach of an employee's implied duty of loyalty, by itself, is not enough to constitute "fraud or defalcation while acting in a fiduciary capacity" under subsection 523(a)(4). Therefore, Downing's motion for summary judgment is denied regarding the dischargeability under subsection 523(a)(4) of the $45,333.33 representing Ms. Sutton's salary.

While this latter debt may perhaps be nondischargeable under another subsection of section 523, the plaintiff's complaint and motion for summary judgment only assert nondischargeability under subsection 523(a)(4). The dischargeability of this debt will be the subject of further proceedings only if Downing notifies the Court in writing within the next twenty days that it wishes to pursue such proceedings.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is granted in part and denied in part. Ms. Sutton's debt owing to the plaintiff on account of the fraudulent checks in the amount of $173,489.73 (187 forged or fraudulent checks totaling $187,997.41, less the $14,507.68 returned to the plaintiff as partial restitution) is nondischargeable under subsection 523(a)(4). The Court denies summary judgment as to the dischargeability of the debt owed for the debtor's breach of her implied duty of loyalty as an employee. The dischargeability of this latter debt will be the subject of further proceedings only if the plaintiff notifies the Court in writing within the next twenty days that it wishes to pursue such proceedings.

IT IS SO ORDERED

_____
Arthur I. Harris
United States Bankruptcy Judge

11